IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT EVERTS | : | Case No. 2:18-cv-690 |
| 1920 Rathmell Road | | |
| Columbus, OH 43207 | : | |
| | | |
| Plaintiff, | : | Judge _____ |
| | | |
| v. | : | |
| | | |
| THE LINCOLN NATIONAL LIFE INSURANCE | : | Magistrate Judge_____ |
| COMPANY | | |
| 1300 S. Clinton Street | : | |
| Fort Wayne, IN 46802-3506 | | |
| | : | |
| Defendant. | | |
| | : | |

## **COMPLAINT**

### **Jury Demand Endorsed Hereon**

For his Complaint against the Defendant, The Lincoln National Life Insurance Company, the Plaintiff, Robert Everts, states:

### **Parties**

1.      The Plaintiff, Robert Everts, a citizen and resident of Ohio, is a former employee of the Catholic Diocese of Columbus, Ohio (the "Diocese"), and is a third-party beneficiary of a group disability insurance policy, Policy No. 00001013389100000 (the "Policy"), issued to the Diocese by The Lincoln National Life Insurance Company.

2.      The Defendant, The Lincoln National Life Insurance Company ("Lincoln"), is an insurance company organized under the laws of a state other than Ohio, with its principal place of business in a state other than Ohio.

**Jurisdiction and Venue**

3.    The Plaintiff's claims arise under the common law of Ohio, the parties are diverse, and the amount in controversy exceeds the jurisdictional amount.  Jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332(a).

4.    The Policy was issued by Lincoln and delivered to the Diocese in Columbus, Franklin County, Ohio.  Venue is appropriate in the Eastern Division of the Southern District of Ohio.

**Facts Common to All Claims**

5.    In May 1980, the Diocese hired Robert Everts as a groundskeeper.

6.    Over the years of his employment, Everts was promoted to the Head of Maintenance, which required him to perform building maintenance, grounds keeping, and vehicle and equipment maintenance.

7.    As an employee of the Diocese, a church employer, Everts was eligible for benefits under the Policy.

8.    The Policy provides, *inter alia*, long-term disability income benefits for persons who are disabled and unable to work.

9.    The Policy provides disability benefits for two years if a claimant is disabled from his "own occupation."  After two years, the Policy pays benefits only to individuals who are disabled from performing the essential functions of "any occupation," as that term is defined in the Policy.

10.    Everts had worked for the Diocese for 35 years when he became disabled from working due to multilevel foraminal stenosis L3-S1, severe foraminal stenosis at L5-S1 on the right side, and a right-sided herniation at L3-4 creating moderate to severe stenosis on that side.

11.     Everts was treated surgically with lumbar decompression/spinal fusion surgery in June 2015, but even after surgery he continued to be unable to perform the essential functions of his own occupation.

12.     Everts applied for, and received, the maximum short-term disability benefits available from Lincoln.

13.     In September 2015, Everts timely applied for long-term disability benefits under the Policy.  Lincoln approved Evert's application and eventually paid Everts a monthly long-term disability benefit from September 6, 2015 through September 6, 2017, the end of Everts's "own occupation" period under the Policy.

14.     In May 2017, Lincoln informed Everts that it had concluded that he was not disabled from "any occupation" and that his benefits would terminate on September 6, 2017.

15.     Everts appealed Lincoln's decision.  His appeal was supported by his treating physician, Dr. Charles Kistler, who is certified by the American Orthopedic Board of Family Physicians.

16.     Dr. Kistler informed Lincoln that Everts was physically incapable of gainful employment because, *inter alia*, he could not sit for more than one-third of a day.

17.     Disregarding Dr. Kistler's judgment and without offering a basis for doing so, Lincoln rejected Everts's appeal.

18.     Everts appealed again.  In response, Lincoln arranged for Everts to be examined by Dr. Kevin Trangle.

19.     Dr. Trangle is neither an orthopedic surgeon nor a rheumatologist.

20.     Everts presented himself for the examination on March 15, 2018.  Dr. Trangle informed Everts at the outset that he (Dr. Trangle) "already had his report mostly finished," and he "just needed to do his exam."

21.     On March 22, 2018, Dr. Trangle submitted a report to Lincoln.  In his report, Dr. Trangle summarized the medical evidence of Everts's numerous injuries and illnesses, including among other conditions, rheumatoid arthritis, polyarthropy, degenerative and arthritic changes in several of his joints including his spine; shoulder issues including a full thickness tear of two tendons, degenerative changes, AC compression, and impingement all of which required surgery in April 2017; and degenerative undersurface tearing and changes of the medial meniscus, cartilage degeneration and loose bodies in both knees, cervical degenerative changes, and bilateral carpal tunnel syndrome.

22.     Despite Everts's extensive impairments, Dr. Trangle concluded in his report that Everts was capable of light strength work capacity.

23.     Despite Lincoln's specific instruction that he do so, Dr. Trangle did not answer responsively the question which Lincoln posed to him: "whether the restrictions and limitations of the treating physicians were 'reasonable.'"

24.     Lincoln provided a copy of Dr. Trangle's report to Dr. Kistler.  After again examining Everts in April 2018, on April 24, 2018, Dr. Kistler disputed Dr. Trangle's conclusion that Everts could work and reiterated his own opinion that Everts was unable to sit for more than one-third of a day.

25.     On November 29, 2017, after Lincoln had terminated Everts's long-term disability benefits, and while Everts's appeal was pending, Lincoln informed Everts that Lincoln

4

believed that he was not only eligible for, but a "good candidate" to receive Social Security disability benefits ("SSDI").

26.    Lincoln then required Everts to apply for SSDI benefits and offered to provide him with assistance in doing so.

27.    SSDI benefits are awarded only if an applicant establishes that he is disabled from engaging in any gainful employment, a definition of "total disability" that is more stringent than Lincoln's "any occupation" definition of disability.

28.    Everts applied for SSDI. On May 27, 2018, Everts's SSDI application was approved, with a disability date of February 9, 2017. Everts was awarded SSDI benefits retroactive to August 2017.

29.    On May 31, 2018, despite the SSDI determination that Everts was totally disabled from engaging in any gainful employment, Lincoln upheld its termination of his long-term disability benefits.

30.    Despite its denial of Everts's continuing claim, Lincoln asserted a right to recover as an "overpayment" the full amount of Everts's SSDI back benefits award.

### Count I – Breach of Contract

31.    The foregoing allegations are incorporated by reference as if fully rewritten herein.

32.    Everts brings this claim under the common law of Ohio.

33.    Everts is a third-party beneficiary under the Policy.

34.    Everts remains disabled under the Policy and entitled to a monthly benefit.

35.    Lincoln breached the terms of its Policy by closing Everts's long-term disability benefits claim and terminating his monthly benefit while he remained disabled.

36.     As a direct and proximate cause of Lincoln's breach of contract, Everts suffered damage in the form of lost monthly disability benefits.

### Count II – Insurance Bad Faith

37.     The foregoing allegations are incorporated by reference as if fully rewritten herein.

38.     Everts brings this claim under the common law of Ohio.

39.     Not only did Lincoln breach its contract with Everts, it also acted in bad faith in doing so.  Lincoln's actions were in bad faith because, *inter alia*:

    a.  Lincoln was aware that Everts was eligible for, and was a "good candidate" for, Social Security disability insurance benefits, yet it denied his "any occupation" disability claim.

    b.  Lincoln required Everts to apply for SSDI benefits, yet it disregarded the SSDI decision awarding Everts benefits.

    c.  Lincoln contacted Everts by phone and letter numerous times directly, to address his SSDI benefits and Lincoln's desire to recoup its alleged overpayment of his long-term disability, knowing that he was represented by counsel in relation to his long-term disability benefits.

    d.  Lincoln took unreasonable actions to justify its decision to terminate Everts's benefits, such as relying upon the report of one brief examination by its own consulting physician while ignoring a large quantity of other medical evidence to the contrary.

    e.  Lincoln unreasonably and selectively reviewed Everts's claim and appeal.

    f.   Despite its knowledge that Everts had not worked in years and was dependent upon his long-term disability benefits, Lincoln terminated Everts's benefits without first affording him the opportunity to provide additional medical evidence.

    g.   Lincoln unreasonably terminated Everts's benefits relying solely on the opinions of its own employees and paid consultants.

    h.   Lincoln unreasonably relied upon the examination of a medical doctor who was neither an orthopedic surgeon nor a rheumatologist in deciding Everts's appeal.

    i.   Lincoln unreasonably ignored the decision of the Social Security Administration that Everts is totally disabled in deciding to uphold its own termination of benefits.

    j.   Lincoln unreasonably ignored Everts's treating physician's determinations and medical evidence in deciding to uphold its termination of benefits.

    k.   Lincoln unreasonably sought to recoup the full amount of Everts's SSDI back benefits award as an alleged "overpayment" of long-term disability benefits that Lincoln paid to Everts for a different time period than that which the SSA awarded him SSDI benefits.

40.    Lincoln's handling and processing of Everts's long-term disability claim was not reasonably justified, and as such, constituted bad faith.

41.    Lincoln's conduct in handling and processing Everts's long-term disability claim was oppressive, and was undertaken knowingly, intentionally, willfully with malice, and in disregard of Everts's rights.

42. Lincoln's denial of Everts's claim for long-term disability is not predicated upon circumstances that furnish a reasonable justification therefore.

43. As a direct and proximate cause of Lincoln's bad faith, Everts suffered harm, including impairment of credit due to unpaid bills.

44. As a direct and proximate cause of Lincoln's bad faith, Everts suffered harm including loss of his group health insurance coverage as of January 1, 2018.

45. Due to this loss of health insurance, Everts has been unable to obtain the surgery that he needs on his right knee, continues to suffer intense, throbbing, daily pain and continues to walk with a severe limp.

46. Lincoln's actions, moreover, were in reckless disregard of Everts's rights under the terms of the Policy.

WHEREFORE, the Plaintiff, Robert Everts demands judgment in his favor and against Lincoln as follows:

A. For compensatory damages for breach of contract and bad faith in an amount to be determined at trial but in no event less than $100,000;

B. For punitive damages in an amount to be determined at trial, but in no event less than $100,000;

C. Attorney's fees and the costs of this action;

D. Pre-judgment and post-judgment interest; and

E. Such other and further relief as the Court determines to be just and equitable.

Respectfully submitted,


_____/s/ *Tony C. Merry*_____
Tony C. Merry          (0042471)
Lesley H. Kuhl          (0067177)
Trial Attorneys
Law Offices of Tony C. Merry, LLC
7100 N. High Street, Suite 302
Worthington, Ohio 43085
Phone (614) 372-7114
Fax (614) 505-6109
tmerry@tmerrylaw.com
lkuhl@tmerrylaw.com
*Attorneys for Plaintiff*


## Jury Demand

The Plaintiff demands trial by jury.


_____/s/ *Tony C. Merry*_____

9